THE STATE, Plaintiff in Error, v. RANDOLPH, Defendant in Error.

1. As to the essentials of a criminal recognizance.
2. Where a recognizance is improperly certified, the defect may be amended at any time before the objection is disposed of, on such terms as will protect the party from being prejudiced by it.
3. It is not essential to the validity of a recognizance taken by a justice, conditioned that a party shall appear in court " to answer an indictment, and

State v. Randolph.

not depart without leave," that it should describe the offence with which the party is charged, or state the facts which gave the justice jurisdiction ; nor need these facts be stated in the writ of *scire facias*. It is sufficient that they appear on the files and entries of the court.

4. A demurrer to a *scire facias* upon a forfeited recognizance, is not to be regarded as taken to what appears in the writ or in the recognizance, but to what appears of record.

5. A proceeding by *scire facias* upon a forfeited recognizanae, is not a civil action within the meaning of the practice act of 1849, but a mere continuation of an existing proceeding.

## *Error to Callaway Circuit Court.*

*Scire facias* upon a forfeited recognizance. The recognizance was filed in the office of the clerk of the Circuit Court on the 9th of October, 1854, and was as follows :

" State of Missouri — county of Callaway. Be it remembered, that, on the 15th day of September, A. D. 1854, Robert D. Randolph and Robert Randolph, sr., of Callaway county, personally came before me, a justice of the peace within and for said county, and acknowledged themselves to owe to the state of Missouri, that is to say, Robert D. Randolph, the sum of two hundred and fifty dollars, and the said Robert Randolph, sr., the sum of two hundred and fifty dollars, to be levied of their goods and chattels, lands and tenements, if the said Robt. D. Randolph shall fail in the condition underwritten. The condition of this recognizance is such, that if the above bounden Robert D. Randolph shall personally appear at the Circuit Court, on the first day of the next term thereof, to be holden for the county of Callaway on the 9th day of October next, then and there to answer an indictment to be preferred to the grand jury against the said Robert D. Randolph for assault, beat and cut, on purpose, of malice aforethought, whereof he stands charged, and shall not depart the same without leave of the said court, then this recognizance to be void ; else to remain in full force. "ROBERT D. RANDOLPH, (seal.)

"ROBERT RANDOLPH, (seal.)

"Taken and certified the day and year last aforesaid.

"ZADOCK HOOK, J. P., (seal.)"

On the same day, there was filed in the office of the clerk the justice's transcript, as follows :

" State of Missouri v. R. D. Randolph. Assault; upon affidavit of H. B. Renor. Warrant issued in this cause 13th day of September, 1854, and returnable forthwith, and delivered to W. T. Snell, sheriff Callaway county.

"W. B. TUCKER, J. P.

" This cause came on to be heard on the 15th day of September, 1854, the defendant being here in court. Both the parties being ready for trial, and the witnesses in this cause having been duly examined, and their examination having been duly committed to writing, and after due deliberation and consideration by the justice, it is ordered and adjudged that this cause be certified to the Circuit Court of Callaway county, and that the said defendant enter into a recognizance to appear before the judge of our said Circuit Court on the second Monday in the month of October next, in the sum of two hundred and fifty dollars for himself and two hundred and fifty dollars for his security, and thereupon said defendant entered into said bond, with Robert Randolph, sr., as his security, as directed by law."

To this transcript was annexed the certificate of W. B. Tucker, the justice.

On the 12th of October, 1854, a forfeiture of the recognizance was entered in the Circuit Court, and on the 19th of December, a *scire facias* issued upon it, which, after reciting that it was taken " before William B. Tucker, otherwise Zadock Hook, justices of the peace within and for Callaway county," and its condition, and the forfeiture, commanded the sheriff to make known to the said Robert D. Randolph and Robert Randolph, sr., that they appear at the next term of the court to show cause why execution should not issue for the penalty.

At the next term, the defendants appeared by attorney, and filed a demurrer, pending which, on motion of the circuit attorney, the suit was dismissed as to Robert D. Randolph, and W. B. Tucker, the justice, was permitted to add to the recog-

State v. Randolph.

nizance, *nunc pro tunc*, the following certificate : "Taken and certified before me on the 15th day of September, 1854.

"W. B. Tucker, J. P."

Afterwards, upon a hearing, the demurrer was sustained, and the case is brought here by writ of error.

*Gardenhire*, (attorney general,) submitted the case for the State without brief or argument.

*H. C. Hayden, J. W. Morrow* and *C. H. Hardin*, for defendant in error, in their brief argued the following points : 1. The recognizance is invalid because it does not appear upon its face that the principal recognizor was charged with any crime or misdemeanor for which the justice was authorized to hold him to bail. It is essential to the validity of a recognizance that a crime, *in substance,* should be charged. (3 J. J. Marsh. 642, 643 ; 1 Dana, 523, 165 ; 2 Kelly, Georgia, 363 ; 2 Black. Comm. 341 ; 33 Maine, 536 ; 18 Ala. 293 ; 2 Carter, Ind., 371 ; 10 Barb. 35 ; 13 Ills. 696 ; 7 Hill, 39 ; 17 Wend. 252 ; 9 Mass. 520 ; 16 id. 447 ; 4 id. 641 ; 7 id. 209 ; R. C. 1845, p. 861, § 26.) - 2. There is a material variance between the *scire facias* and the recognizance. The recognizance appears to have been taken and certified by Zadock Hook, and that set out in the *sci. fa.* is one taken and certified by "Zadock Hook, otherwise W. B. Tucker, justices of the peace." The amendment allowed by the Circuit Court was a nullity, or, if proper, could only operate to give the Circuit Court jurisdiction from the time it was made, and could not cut back so as to give validity to the prior proceedings, and detain the defendants in court to answer another recognizance and a different cause of action. Even if the amendment was properly allowed, still there is a variance. 3. There is no averment in the *scire facias* that the recognizance was certified and returned to the Circuit Court. (1 Dana, 523 ; R. C. 1845, § 29, p. 861.) 4. This being a civil proceeding, instituted by the State to recover a debt of record, a *scire facias* was not the proper remedy, as it is not embraced among the exceptions in the 6th

31—vol. xxii.

section of article 30 of the code of practice of 1849. A *scire facias* upon a criminal recognizance is a common law proceeding, and not a statutory remedy. (12 Mass. 1; 1 Chitty's Pl. 111.) 5. The recognizance contains no words of covenant or obligation *on the part of the defendants*, and for that reason does not bind them. (R. C. 1845, p. 893, § 14.)

LEONARD, Judge, delivered the opinion of the court.

In order to simplify the questions raised here, and render the solution of them more easy, we will briefly refer to the nature of a recognizance, and the usual proceedings to enforce its execution, confining what we have to say to a recognizance taken in a criminal proceeding to secure the appearance of the accused. It is, as we all know, an acknowledgment, taken by some court or officer authorized by law to do so, of a debt due to the State, but suspended upon the condition that the accused appear in court at the appointed time, and answer the alleged charge, and do not depart without leave. The essentials of such a recognizance are, that it be taken by a competent court or officer, in a case existing before such authority, and for the performance of some act that the law allows to be secured in that way, and in the form prescribed for that purpose.

At common law the obligation was created by the mere verbal acknowledgment of the party, which the law entrusted the court or officer with the duty of taking and certifying ; but our statute (R. C. 1845, chap. 138, art. 9, § 14, p. 893) has altered this, and, for the better security of the party against mistake or design, has required all recognizances that are taken in open court to be entered on the minutes of the court, and the substance to be read to the party ; and in all other cases, when taken out of court, to be in writing and signed by the persons to be bound. Of course, the party is bound as soon as the obligation is entered into in the form prescribed ; but if it be taken by an officer or in another court, it must be certified and

filed in the court, where the party is bound to appear, in order to render it complete and make it effectual. But, in such case, if it be imperfectly certified, the defect may be amended—*nunc pro tunc*—at any time before the objection is disposed of; and this, like all other amendments, is allowed only upon such terms as will protect the other party from being prejudiced by it.

Although a recognizance can only be taken to secure the performance of some act that the law allows to be secured in that way, we do not deem it essential to the validity of the recognizance, that it should specify upon its face the specific charge that the party is to answer to. It is impossible to reconcile the American cases upon this subject, and we shall not attempt it, as we think the matter is plain enough.

The meaning of a recognizance is, that the party shall not only appear and answer the particular charge, but also, in the language of Hawkins, (Pl. Cr. b. 2, chap. 15, § 84,) "put himself as much under the power of the court as if he had been in the custody of the proper officer;" and in the same book, it is laid down, "If persons be bound by a recognizance that J. S. shall appear in the K. B., in such a term, to answer such an information against him, *and not depart till he shall be discharged by the court*, and afterwards the attorney general enter a *nolle prosequi* as to that information, and exhibit another upon which the defendant is convicted, and he refuses to appear in court after personal notice, the recognizance is forfeited. For, being express that the party shall not depart till he be discharged by the court, it can not be satisfied unless he be forthcoming and ready to answer any other information exhibited against him while he continued undischarged." In the People v. Stager, (10 Wend. 431,) it was said that the clause "that he shall not depart until discharged," is not necessary to be inserted in the recognizance, in respect to the charge upon which the recognizance is entered into; that its use is to detain the party upon other charges that may be exhibited against

him. In Champlain v. The People, (2 Comst. 81,) it was held to be no answer to a recognizance conditioned to appear "and answer to an indictment to be found and not depart without leave," that no indictment was found, on the ground that the accused was not entitled to his discharge as a matter of course.

We believe it will be found upon examination, that the precedents of recognizances are quite as common in the general form, to answer " to an indictment to be found," without any specification of the particular offence, as in the other form, specifying the particular charge.

And we do not think our legislature intended by the clause to which we have been referred, (R. C. 1845, chap. 138, art. 2, § 26,) to make any change in the law in this respect, as indeed no reason can be suggested for doing so. Now, if we strike out of this recognizance the words in which the justice has attempted to describe the particular charge, it is a recognizance to answer generally to any indictment that may be preferred against the party : just what it would have been, in substance, had the particular offence been described with technical exactness ; on account of the insertion in it of the clause " not to depart," &c. The recognizance therefore can not be void for the alleged defect, even if the language describing the particular charge be wholly unintelligible, which, by the way, is not the case, although it is certainly a very informal description of a felonious assault.

A justice of the peace has jurisdiction to commit and recognize for all offences committed in his county, cognizable in the Circuit Court, and of course the justice here was a competent officer to take a recognizance from this defendant for his appearance in the Circuit Court to answer to an indictment to be there preferred against him. And, although there must have been a case pending before him, in order to give validity to the recognizance he took, yet the particular facts by which he acquired jurisdiction to take the recognizance need not and usually

do not appear upon the recognizance itself. In New York, where it is usual to file a declaration in a proceeding by *scire facias* upon a recognizance, it was held in the People against Kane, (4 Denio, 531,) that, in such a declaration, it was not necessary to aver the special facts by which the officer became authorized to take the recognizance in the particular case, over-ruling two previous cases in the same court upon that subject. Bronson, C. J., in delivering the opinion of the court, remarked : " When the recognizance has a condition to do some act, for the doing of which such an obligation may be properly taken, and the officer before whom it was acknowledged had authority by law, in cases of that general description, I think the recognizance is valid, although it does not recite the special circumstances under which it was taken. And in declaring upon such a recognizance, I do not think it necessary to aver the existence of the particular facts which prove that the officer had authority to take it. It is undoubtedly a well settled and highly important principle, that, before any one can be affected by the judgment or order of a court or officer, of special and limited jurisdiction, it must not only appear that the court or officer had authority to act in cases of that kind, but that jurisdiction had been acquired in the particular case. But there is an obvious distinction between cases where a charge or burden is attempted to be fastened upon a party by a proceeding *in invitum*, and those where the charge or burden springs from his own voluntary act." In our practice, no record of the recognizance is drawn up in form, stating the whole proceeding, nor is any declaration filed, or indeed necessary, as the facts that entitle the State to an award of execution can not appear otherwise than from the entries and files of the court ; and, according to our mode of proceeding, which is very informal, the demurrer in this case must be considered as taken not to the writ, which does not perform here the double office of writ and pleading, as it does in those cases, where some extrinsic fact is necessary in order to make out the party's case, but to what ap-

pears of record, or rather to what appears on the files and entries of the court from which the formal record would, if required, be drawn up. And here it thus appeared that there was an affidavit, a warrant, an apprehension of the party, an examination and an adjudication that he give bail for his appearance, and of course it thus sufficiently appeared how the officer acquired jurisdiction in the particular case; and the defendant's objection is thus reduced to the mere formal one, that it did not appear upon the face of the recognizance, or upon the writ of *scire facias*, neither of which was necessary according to the New York cases, or under our peculiar practice.

In reference to the proceeding upon the recognizance, a few remarks will be sufficient to answer the objections that have been taken. The recognizance, after the forfeiture, being equivalent to a judgment against the party for the amount confessed, the State may proceed to collect it upon execution; and in England, in criminal recognizances, where there was no doubt as to the forfeiture, this seems to have been done without any *scire facias*, as was at one time the practice in New York, or the State may bring a fresh suit upon it; and if the latter course were taken, it might then be insisted that the State should sue in the form prescribed to other persons. The present proceeding however, is not a civil action within the meaning of the new code, but a mere continuation of an existing proceeding, to enforce the collection of the debt confessed.

In England, as soon as the recognizance is forfeited, it is *estreated* into the court of exchequer for collection, and we briefly refer to the proceedings there to show the nature and character of a *scire facias*, whether taken in criminal proceedings or for other purposes. An extent is a writ of execution against the body, goods and lands of the debtor, and when used by the crown, is an ancient prerogative writ for obtaining satisfaction of debts due to the king; and upon a recognizance of any kind to the king, if it be clearly forfeited, as usually sufficiently appeared when the condition was for the appearance of

the accused, an extent issued in the first instance, *without any scire facias* (2 Tidd Prac. 1090); but if it were doubtful whether or not there had been a forfeiture, a *scire facias* was necessary. (2 Tidd. 1140.) This being a judicial writ, founded upon some matter of record, issues out of the court where the record is, and although, where it discloses extrinsic facts and requires an answer from the defendant, it is in the · nature of a declaration, yet, when the object is to obtain execution upon what appears of record, it is properly called a writ of execution (2 Tidd. 1139); but because even then it may be pleaded to, it is so far considered in law as an action. (2 Tidd. 1139.) When sued out upon a recognizance, it recites the recognizance, and commands the sheriff to warn the defendant to appear and show cause why the king should not have execution of the sum acknowledged to be due. If the sheriff warn the defendant, he returns the writ accordingly; otherwise he returns " *nihil;*" and in the latter case a second *scire facias* issues, and on the return of either " served" or of two " *nihils,*" a rule is entered requiring the party to appear and plead. If he appear, a *declaration is filed* and the defendant ˙ may then move to set aside the proceedings for irregularity, or may plead in abatement or in bar, as in other actions. (2 Tidd. 1142.) Such is the English practice. Ours, it is seen, is somewhat different. The practice in some, if not in all the northern states, following the English practice, is to file a declaration; but in Virginia, and other southern states, this is never done; (Robinson's Pract. 584; Brown v. Harley, 2 Florida, 162); and we have adopted the latter practice. Here no fact, as we have before remarked, need be shown by the State, except what appears upon the entries and files of the court, and upon the demurrer, therefore, we think reference may be had to them; and if sufficient appear upon them to entitle the State to an award of execution, the demurrer ought to be overruled, without any reference to the omissions in the writ.

State v. Randolph.

We are not advised as to the particular ground upon which the demurrer was sustained; certainly, both the recognizance and the *scire facias* are somewhat informally drawn up ; but we think both are sufficient in substance, and that there was enough upon the files and entries of the court to entitle the State to judgment upon the demurrer.  The result *is,* the judgment must be reversed, and the cause remanded for further proceedings.   Judgment reversed, and cause remanded.

[END OF JANUARY TERM.]

# CASES

## ARGUED AND DETERMINED

### IN

# THE SUPREME COURT

### OF

## THE STATE OF MISSOURI,

MARCH TERM, 1856, AT ST. LOUIS.